**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CEDRIC EVANS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2584** |
| **N. BURL CAIN, WARDEN** | **SECTION "C"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Cedric Evans ("Evans"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 26, 1997, Evans was charged by Bill

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

of Information in St. Tammany Parish with possession of 28 grams or more, but less than 200 grams, of cocaine.[3]

The record reflects that, on December 30, 1996, at approximately 9:30 p.m., Louisiana State Police Trooper Kurt Vorhoff observed a vehicle veering off the roadway as it traveled on Interstate 12 between Hammond, Louisiana and Covington, Louisiana.[4]  Trooper Vorhoff activated his blue lights and siren, and the vehicle stopped.  Carolyn Travis was driving the vehicle and Evans was a passenger.

While speaking to Travis, Trooper Vorhoff noticed that Evans was making rapid movements in the vehicle, including repeatedly turning around to look behind him, reaching forward, and reaching under his seat.  Travis indicated she was traveling with her boyfriend from Texas to the casino boats in Mississippi, and they planned to stay there a couple of days before returning.  She also indicated that a rental contract for the car was in the glove compartment.

Evans was still moving around in the car as Trooper Vorhoff approached the vehicle and asked him to retrieve the rental contract from the glove compartment.  Evan's hands shook as he retrieved the rental contract, and he did not make eye contact with Trooper Vorhoff.  Evans indicated that Travis was his wife.  He stated that they were traveling from Texas to the casino boats in Biloxi and would be staying for about a week before possibly continuing to Hattiesburg.

Another Trooper arrived on the scene and Trooper Vorhoff returned to Travis and issued her a warning citation.  In response to Trooper Vorhoff's inquiry, Travis stated she did not have

[3]St. Rec. Vol. 1 of 8, Bill of Information, 3/26/97.

[4]The facts of the case were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal from his 2005 conviction.  *State v. Evans*, 998 So.2d 197, 199-200 (La. App. 1st Cir. 2008); 1st Cir. Opinion, 2008-KA-0417, pp. 3-5, 10/31/08.

anything illegal and did not know of anything illegal in the car. She also gave Trooper Vorhoff permission to search the vehicle.

Trooper Vorhoff approached the vehicle again, explained to Evans that Travis had given him consent to search the vehicle, and asked Evans to step out of the car while it was being searched. As Evans stepped out of the car, he dropped a clear, plastic object with his left hand. Trooper Vorhoff also noticed that Evans had a large, abnormal bulge at his mid-section. Trooper Vorhoff was concerned that Evans might have a weapon and instructed him to put his hands on top of his head. While performing an outer-clothing pat down of the defendant, Trooper Vorhoff observed a medium-sized, clear, plastic bag containing a white substance, which he suspected was cocaine.

Trooper Vorhoff told Evans to put his hands on the car. Evans briefly complied, but then spun around, struck Trooper Vorhoff, and attempted to flee. Trooper Vorhoff grabbed Evans's arm, but Evans got loose and began running away. During the ensuing chase, Evans threw down several packages of suspected cocaine before being tackled by Trooper Vorhoff. The trooper subsequently recovered nine bags, containing a total net weight of 139 grams of cocaine, and one bag containing approximately 11 grams of marijuana. The bags were located either where Trooper Vorhoff had seen Evans throw them down or directly along the path that he chased the defendant.

Evans was advised of his rights. He told the trooper that "the dope" belonged to him, and Travis did not have anything to do with the drugs. After signing an advice of rights/waiver form at the narcotics office, Evans also stated that he had been carrying approximately eight ounces of crack on his person, had purchased the drugs in Houston for $3500, and had planned to sell the drugs in Hattiesburg, Mississippi.

On June 29, 1998, Evans's case was called to trial, and his counsel did not appear.[5]  After questioning, the Trial Court determined that Evan's had effectively waived his right to counsel, and appointed a local public defender to act as stand-by counsel.  Evans was tried before a jury on June 29 and 30, 1998, and was found guilty as charged.[6]  He was sentenced to serve 40 years in prison as a second offender.[7]  On appeal, however, the Louisiana First Circuit determined that Evans had not knowingly and voluntarily waived his right to counsel.[8]  The Court vacated the conviction and remanded the matter for new trial.

The record indicates that Evans was a fugitive for over two years after his case was remanded for a new trial.[9]   He was later called to trial before a jury on February 9 and 10, 2004.[10] On the second day, the Trial Court granted a mistrial due to lead counsel's absence.[11]

---

[5]St. Rec. Vol. 1 of 8, Trial Minutes, 6/29/98; St. Rec. Vol. 2 of 8, Trial Transcript, 6/29/98.

[6]*Id*.; St. Rec. Vol. 1of 8, Trial Minutes, 6/30/98; Jury Verdict, 6/30/98; St. Rec. Vol. 2 of 8, Trial Transcript, Volume II, 6/29/98; Trial Transcript, 6/30/98; St. Rec. Vol. 3 of 8, Trial Transcript, Volume II (continued), 6/29/98.

[7]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 10/20/98; Multiple Bill, 9/1/98; St. Rec. Vol. 3 of 8, Multiple Bill Hearing Transcript, 9/1/98; Sentencing Transcript, 10/20/98.

[8]*State v. Evans*, 771 So.2d 322 (La. App. 1st Cir. 2000) (Table); St. Rec. Vol. 1 of 8, 1st Cir. Opinion, 99-KA-2208, 9/22/00.

[9]St. Rec. Vol. 1 of 8, Minute Entry, 12/20/00; Minute Entry, 2/13/01; Minute Entry, 4/16/03.

[10] St. Rec. Vol. 1 of 8, Trial Minutes, 2/9/04; Trial Minutes, 2/10/04; St. Rec. Vol. 3 of 8, Trial Transcript, 2/9/04; St. Rec. Vol. 4 of 8, Trial Transcript (continued), 2/9/04; Trial Transcript, 2/10/04; *see also*, Motion Hearing Transcript, 2/9/04.

[11]St. Rec. Vol. 1 of 8, Trial Minutes, 2/10/04; St. Rec. Vol. 4 of 8, Trial Transcript, 2/10/04.

Evans again was tried before a jury on February 28 and March 1, 2005.[12]  He again was

found guilty as charged.[13]  At a hearing held April 22, 2005, the Trial Court denied Evans's motions

for new trial, in arrest of judgment, and for judgment of acquittal.[14]  The State also filed a multiple

bill charging Evans as having three prior felony convictions.[15]

The Trial Court held a hearing on the multiple bill on June 2, 2005.  The Court held the

matter open to allow the State to locate additional records.[16]  To avoid further delay, on March 3,

2006, the Trial Court sentenced Evans on the underlying charge to serve 40 years with the first 10

years to be served without benefit of parole, probation, or suspension of sentence.[17]  The Court also

denied Evans's motion to reconsider that sentence.[18]

The Trial Court resumed the hearing on the multiple bill on March 30, 2007.[19]  After ordering

but not receiving additional briefing, the Court found that the State proved two of the three prior

felonies and adjudicated Evans to be a third felony offender by judgment issued September 20,

---

[12]St. Rec. Vol. 1 of 8, Trial Minutes, 2/28/05; Trial Minutes, 3/1/05; St. Rec. Vol. 4 of 8, Trial Transcript, 2/28/05; Trial Transcript, 3/1/05; St. Rec. Vol. 5 of 8, Trial Transcript (continued), 3/1/05.

[13]St. Rec. Vol. 1 of 8, Trial Minutes, 3/1/05; Jury Verdict, 3/1/05; St. Rec. Vol. 5 of 8, Trial Transcript (continued), 3/1/05.

[14]St. Rec. Vol. 1 of 8, Minute Entry, 4/22/05; Motion for New Trial, 4/22/05; Motion in Arrest of Judgment, 4/22/05; Motion for Judgment of Acquittal, 4/22/05; *see also*, Motion for New Trial, 3/7/05; Trial Court Order, 3/9/05; St. Rec. Vol. 5 of 8, Motion Hearing Transcript, 4/22/05.

[15]St. Rec. Vol. 1of 8, Multiple Bill, 4/22/05.

[16]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 6/2/05; St. Rec. Vol. 5 of 8, Multiple Bill Hearing Transcript, 6/2/05.

[17]St. Rec. Vol. 1 of 8, Sentencing Minutes, 3/3/06; St. Rec. Vol. 5 of 8, Sentencing Transcript, 3/3/06.

[18]St. Rec. Vol. 2 of 8, Motion to Reconsider Sentence, 3/21/06; Trial Court Order, 3/28/06.

[19]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 3/30/07; St. Rec. Vol. 5 of 8, Multiple Bill Hearing Transcript, 3/30/07.

2007.[20]  On October 11, 2007, the Court sentenced Evans as a third offender to serve life in prison without benefit of parole, probation, or suspension of sentence.[21]  The Court also denied counsel's oral motion to reconsider the sentence.

On direct appeal to the Louisiana First Circuit Court of Appeal, Evans's counsel raised four assignments of error:[22] (1) the Trial Court erred in denying the motion to quash the bill of information based on untimely prosecution; (2) the Trial Court erred in adjudicating Evans to be a third offender based on the State's failure to meet its burden of proof; (3) the Trial Court erred in sentencing Evans to life; and (4) the Trial Court erred in failing to vacate the original sentence before sentencing Evans as a multiple offender.  Evans also filed pro se one assignment of error in which he argued that the evidence was insufficient to support the third offender adjudication.[23]  On October 31, 2008, the Louisiana First Circuit affirmed Evans's conviction, multiple offender adjudication, and sentence, finding no merit to the claims raised.[24]

On December 3, 2008, Evans's counsel timely filed a writ application with the Louisiana Supreme Court in which he argued the following:[25] (1) the Louisiana First Circuit erred in affirming

---

[20]St. Rec. Vol. 2 of 8, Trial Court Judgment, 9/20/07; Per Curiam Order, 4/30/07.  This adjudication inherently acted to deny Evans's various motions to quash the multiple bill.  St. Rec. Vol. 1 of 8, Motion to Quash, 5/3/05; Supplemental Motion to Quash, 11/3/05; St. Rec. Vol. 2 of 8, Third Motion to Quash, 4/28/06; *see also*, St. Rec. Vol. 1 of 8, Supplemental Motion to Quash, 5/4/05; Trial Court Order, 5/26/05; St. Rec. Vol. 2 of 8, Motion for Dismissal of Habitual Offender Bill, 9/24/07; Trial Court Order, 9/26/07.

[21]St. Rec. Vol. 1 of 7, Sentencing Minutes, 10/11/07; St. Rec. Vol. 5 of 8, Sentencing Transcript, 10/11/07.

[22]St. Rec. Vol. 8 of 8, Appeal Brief, 2008-KA-0417, 5/16/08.

[23]St. Rec. Vol. 8 of 8, Supplemental Brief, 2008-KA-0417, 7/10/08.

[24]*State v. Evans*, 998 So.2d at 197; St. Rec. Vol. 6 of 8, 1st Cir. Opinion, 2008-KA-0417, 10/31/08.

[25]St. Rec. Vol. 7 of 8, La. S. Ct. Writ Application, 08-K-2840, 12/3/08 (postmarked 12/1/08).

the denial of the motion to quash; (2) the Louisiana First Circuit erred in affirming the multiple offender adjudication; and (3) the Louisiana First Circuit erred in affirming the life sentence.

On June 19, 2009, the Louisiana Supreme Court denied the writ application without stated reasons.[26] Evans's conviction became final 90 days later, September 17, 2009, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.     State Procedural Background

On June 14, 2010, Evans submitted an application for post-conviction relief to the Trial Court raising two grounds for relief:[27] (1) ineffective assistance of counsel for failure to respond to the Trial Court's per curiam order and failing to object to the Court's order relying on the predicate offenses one and three in finding him to be a multiple offender; and (2) ineffective assistance of appellate counsel for failure to argue *State v. Smith*, 415 So.2d 930 (La. 1982), to show that the predicate offenses could not be used because the transcripts were unavailable.

In answering Evans's application, the State argued that he failed to establish deficient performance or prejudice under *Strickland v. Washington*, 446 U.S. 668 (1984), because his claims focus on error by the Trial Court not counsel in an effort to re-litigate what was found meritless on appeal.[28] The State also argued that the claims were repetitive under La. Code Crim. P. art. 930.4 and not a ground for post-conviction relief under La. Code Crim. P. art. 930.3. The State further

---

[26]*State v. Evans*, 10 So.3d 732 (La. 2009); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2008-K-2840, 6/19/09.

[27]St. Rec. Vol. 6 of 8, Uniform Application for Post-Conviction Relief, 1/15/10 (dated 1/13/10); Memorandum in Support of Application for Post-Conviction Relief (undated); *see also*, duplicate Uniform Application for Post-Conviction Relief, 1/26/10 (dated 1/22/10); Letter from Evans, 1/26/10.

[28]St. Rec. Vol. 6 of 8, District Attorney's Answer, 2/2/10.

argued that Evans could not collaterally attack a prior conviction as a ground for post-conviction relief, citing *State v. Brown*, 870 So.2d 976 (La. 2004).

Evans filed a traverse contending, under a broad reading, that his trial and appellate counsel should have provided the courts with the proper law so they could have made different decisions about the evidence used to support of the multiple offender adjudication.[29] Referencing the reasons provided by the State, on May 13, 2010, the Trial Court denied relief finding no merit to the claims under *Strickland* and no other grounds for relief.[30] The Louisiana First Circuit denied Evans's subsequent writ application without state reasons.[31]

Evans also sought review of his claims in the Louisiana Supreme Court.[32] The Court denied the application on procedural grounds on September 23, 2011, citing La. Code Crim. P. art. 930.3, *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996), *State v. Cotton*, 45 So.3d 1030 (La. 2010), and *State v. Thomas*, 19 So.3d 466 (La. 2009).[33]

---

[29]St. Rec. Vol. 6 of 8, Traverse, 2/17/10.

[30]St. Rec. Vol. 6 of 8, Order with Reasons, 5/13/10.

[31]St. Rec. Vol. 7 of 8, 1st Cir. Order, 2010-KW-1043, 8/13/10; 1st Cir. Writ Application, 2010-KW-1043, 6/8/10 (dated 6/7/10).

[32]St. Rec. Vol. 7 of 8, La. S. Ct. Writ Application, 10-KH-2098, 9/14/10 (postmarked 9/9/10, dated 9/8/10); St. Rec. Vol. 6 of 8, La. S. Ct. Letter, 2010-KH-2098, 9/14/10 (showing postmark 9/9/10).

[33]*State ex rel. Evans v. State*, 70 So.3d 807 (La. 2011); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2010-KH-2098, 9/23/11.

### III.    <u>Federal Habeas Petition</u>

On November 3, 2011, the clerk of this Court filed Evans's petition for federal habeas corpus relief, in which he raised the following five grounds for relief:[34] (1) the Trial Court erred in denying the motion to quash; (2) the Trial Court erred in adjudicating him to be a third offender based on insufficient evidence; (3) the Trial Court erred in sentencing him to life imprisonment; (4) ineffective assistance of counsel for failure to respond to the Trial Court's per curiam order and object to the Court's order relying on the predicate offenses one and three in finding him to be a multiple offender; and (5) ineffective assistance of appellate counsel for failure to argue *State v. Smith*, 415 So.2d at 930 to show that the predicate offenses could not be used because the transcripts were unavailable.

The State filed an answer and memorandum in opposition to Evans's petition conceding its timeliness and arguing that Evans's failed to exhaust state court remedies as to his first claim, which was based on a different theory than that presented to the state courts.[35] The State also argues that Evans's claims are without merit.

On January 20, 2012, Evans filed a traverse to the State's opposition in which he requests that his unexhausted first claim, denial of the motion to quash, be voluntarily dismissed. He further argues that his remaining claims entitle him to relief. Based on Evans's request, it will be recommended herein that his first claim be voluntarily dismissed.

---

[34]Rec. Doc. No. 3.

[35]Rec. Doc. Nos. 11 and 12.

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[36] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on October 7, 2011.[37]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, as discussed above, the State argued that Evans's failed to exhaust his first claim, and he has requested that the claim be dismissed.  As noted above, that claim should therefore be dismissed.  The State also conceded, and the Court has determined that, Evans's petition was timely filed.

The State, however, has wholly failed to mention or consider the applicability of the procedural default doctrine as required by this Court's briefing order and in spite of the clear reliance thereon by the Louisiana Supreme Court in denying Evans's fourth and fifth claims

---

[36]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Evans's petition on November 3, 2011, when the filing fee was received.  Evans dated his signature on the form petition on October 7, 2011.  This is the earliest date on which he could have submitted the pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

presented to this Court.  This is an obvious defense overlooked by the State's response.  For the following reasons, the Court will address Evans's procedural default of the fourth and fifth claims raised herein.

## V.    Procedural Default

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court should determine as a threshold matter whether procedural default has occurred on any asserted claim.  *Nobles*, 127 F.3d at 420.  This court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered.  *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).  The Fifth Circuit has stated that "[a] district court may, in its discretion, raise the affirmative defense of procedural default in habeas proceedings sua sponte."  *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk*, 144 F.3d at 360).  Before doing so, however, the district court should consider, "(1) whether the petitioner had notice that the district court was going to raise the defense sua sponte and had an opportunity to respond, and (2) 'whether the state's failure to raise the defense is merely inadvertence or the result of a purposeful decision to forgo the defense.'"  *Id.* (quoting *Magouirk*, 144 F.3d at 360).  Having considered these factors, the Court finds it appropriate to raise *sua sponte* the procedural default defense in this instance.

First, Evans is placed on notice by this Report and Recommendation that the Court is raising procedural default, and he will have an opportunity to specifically object to the procedural default ruling.  Second, the State's failure to raise the defense is clearly inadvertent.  The State at no time examined the actual decisions of the state courts addressing Evans's claims.  Both the state trial court, by reference, and the Louisiana Supreme Court on post-conviction review relied upon state

procedural rules as the basis for dismissal of Evans's fourth and fifth claims. The Louisiana Supreme Court had the last reasoned decision citing La. Code Crim. P. article 930.3, *State ex rel. Melinie*, *State v. Cotton*, and *State v. Thomas* to dispose of Evans's ineffective assistance of counsel claims arising out of the multiple offender adjudication. The State's failure to mention these reasons for denial and its failure altogether to mention procedural default is a result of the respondent's unfamiliarity with the federal standards of habeas corpus review and is not considered to be a purposeful decision to forgo the defense. The State has not in any manner made an express waiver of the procedural default defense in this case. For these reasons, the Court finds that it is appropriate to consider the procedural default of the claims as imposed by the Louisiana Supreme Court.

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is** *sua sponte* **raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

As noted above, Evans raised his two ineffective assistance of counsel claims in his application for post-conviction relief to the state courts. The claims were ultimately denied by the Louisiana Supreme Court pursuant to La. Code Crim. P. art. 930.3 and related state law which prohibits challenges to sentencing and multiple offender proceedings on post-conviction review. This was the last reasoned decision on these claims.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125

(1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

This Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of the claim on federal habeas corpus review.

### A.      Independent and Adequate State Grounds

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

In this case, the basis for the Louisiana Supreme Court's bar to review were the state procedural requirements found in La. Code Crim. P. art. 930.3, *State ex rel. Melinie*, 665 So.2d at 1172, *State v. Cotton*, 45 So.3d at 1030, and *State v. Thomas*, 19 So.3d at 466, which prohibit post-conviction review of habitual offender proceedings on post-conviction review, including claims of

ineffective assistance of counsel arising therefrom, excessive sentence and other sentencing errors. *State v. Cotton*, 45 So.3d at 1030; *State v. Thomas*, 19 So.3d at 466. The bar was therefore based solely in state law and was independent of Evans's federal claims.

A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Glover*, 128 F.3d at 902; *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997) (in order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule). A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts do not honor that bar. *Accord Davis v. Johnson*, No. 4:00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not

adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). Where such foundation and basis does exist, as it does here, the bar must stand.

In this case, the state courts relied on La. Code Crim. P. art. 930.3 and related state case law to bar review of Evans's post-conviction claims challenging his multiple offender proceedings and sentence, including the adequacy of his counsel. The federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and its progeny are both independent and adequate state law grounds for dismissal which bar review of similar claims by the federal courts in a habeas corpus proceeding. *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, *State ex rel. Melinie*) (Table, Text in Westlaw); *Taylor v. Cain*, No. 07-3929, 2008 WL 4186883, at *16 (E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05-0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999). Furthermore, the Louisiana Supreme Court has expressly included ineffective assistance in matters prohibited from post-conviction review and has consistently applied that rule in its opinions, including those cited in Evans's case.

The Court reiterates that it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274 at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3 as applied to ineffective assistance of counsel claim). The Louisiana courts' decision to bar such claims is within their authority and prerogative. As such, as in this case, the Court finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 and the related state case law is adequate to bar review of the merits of Evans's ineffective assistance of counsel claims during the multiple offender proceedings. *See Lott v. Miller*, No. 05-6046, 2008 WL 4889650 at *1 n.1 (E.D. La. Nov. 3, 2008) (Africk, J.) (applying La. Code Crim. P. art. 930.3 to bar an ineffective assistance of counsel claim); *see also*, *Cotton v. Cooper*, No. 11-0231, 2011 WL 5025311, at *7-10 (E.D. La. Sep. 14, 2011), *adopted by*, 2011 WL 5025295, at *1 (E.D. La. Oct. 21, 2011); *Richardson v. Cain*, No. 07-2999, 2010 WL 1838642, at *11 (E.D. La. Apr.1, 2010), *adopted by*, 2010 WL 1837924, at *1 (E.D. La. May 3, 2010); *Wallace v. Cain*, No. 06-11271, 2009 WL 3367052, at *14 (E.D. La. Oct. 15, 2009); *Simmons v. Cain*, No. 06-2299, 2006 WL 3524144, at *6-7 (E.D. La. Dec. 5, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8-9 (E.D. La. Jun. 30, 2005).

Evans will be excepted from the procedural bar to federal review of his claims only if he can show cause for his defaults and prejudice attributed thereto. Alternatively, he could demonstrate that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). These exceptions to the imposition of a bar will be addressed below.

**B.** **Cause and Prejudice**

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle*, 456 U.S. at 129).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, Evans has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Evans from raising the claims in a procedurally proper manner. Evans was allowed to file a *pro se* appellate brief on direct appeal, and he did not include these claims therein. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual

prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Evans's claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[38]

## C.    Fundamental Miscarriage of Justice

Evans may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

---

[38]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. *Id.*

Evans does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction or on the multiple offender adjudication. His claims address alleged procedural failings in the multiple offender proceedings, and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He has failed to overcome the procedural bar to his claims. The claims are procedurally barred and can be dismissed with prejudice for that reason.

## VI. Standards of Review on the Merits of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf*. *Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VII.    Insufficient Evidence to Support the Multiple Offender Adjudication

Evans alleges that the evidence was insufficient to support the multiple offender adjudication. He challenges the evidence used to establish his prior convictions in 1988 from Forrest County, Mississippi, in Case No. 12395 for possession of marijuana with intent to deliver (referred to by Evans as "Predicate No. 1"), in 1993 from Hinds County, Mississippi, for possession of cocaine, and in 1990 from Forrest County, Mississippi, for possession of marijuana.[39] The Court notes that the 1990 conviction was rejected by the state trial court, because the State failed to prove it was equivalent to a felony in Louisiana. It was not used to adjudicate him as a third felony offender and is not relevant to the analysis herein.

Evans specifically complains that the State only presented the indictment, entry of plea of guilty, and the judgment for the 1988 conviction. He also complains that the state failed to produce any proof that he signed a waiver of his rights in connection with the guilty plea in the 1993 Hinds County conviction for possession of cocaine. Evans argues that, under Louisiana law, the State was required to prove the prior convictions from another state with certified copies of the minute entries or equivalent document showing the plea and that he was represented by counsel, which they failed to do.

On habeas review in this Court, the well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), requires the court to determine whether, after identifying the

---

[39]Evans confused the descriptions of these convictions in his brief; however, under a broad reading the Court was able to decipher his intent.

elements of the charge as defined by the State and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charge to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir. 2011). To determine whether a verdict is adequately supported by the record, the court must review the substantive elements as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995). The court's consideration of the sufficiency of the evidence extends only to what was presented to the state trial court. *See McDaniel v. Brown*, __U.S. __, 130 S. Ct. 665, 672, 673 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses; those determinations are the exclusive province of the fact-finder. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*, 55 F.3d at 1062.

The Court first notes that Evans claims that the state courts applied the wrong standards under state law in addressing the sufficiency of the proof presented at the multiple offender

proceedings. This does not merit federal habeas corpus review or relief. *Accord Swarthout v. Cooke*, __ U.S. __, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, federal habeas review is limited to reviewing whether a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal habeas corpus court, therefore, will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir .1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Furthermore, for the following reasons, the law as applied by the state courts was the proper law as presented by the Louisiana Supreme Court. In addition, under the applicable federal standards, the evidence presented was sufficient to support the multiple offender adjudication.

To establish that a defendant is a habitual offender under La. Rev. Stat. Ann. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *State v. Shelton*, 621 So.2d at 779; *State v. Staggers*, 860 So.2d 174, 180 (La. App. 5th Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction and representation of counsel. *Id*. However, independent proof, such as matching fingerprints and other vital information, is required

to show that the defendant is the same person identified in those records. *State v. Walker*, 795 So.2d 459, 463 (La. App. 5th Cir. 2001).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden then shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.

*State v. Shelton*, 621 So.2d at 779-80 (footnotes omitted).

Evans seeks review of the evidence that he is a third offender claiming that the State did not produce an actual certified minute entry to establish the prior guilty pleas. He does not deny that he was the same person, nor does he deny that he was in fact represented by counsel. He merely complains that the documentation presented was not a certified minute entry. Louisiana law did not require that the State do so.

The record shows that, after several hearings, the state trial court considered the evidence produced by the State with regard to the three Mississippi convictions. In its Judgment issued September 20, 2007, the Court considered and accepted the proof as sufficient on the 1988 felony conviction for possession of marijuana with intent to deliver and the 1993 felony conviction for

24

possession of cocaine. The Court found that the State failed to prove that the 1990 conviction would have been a felony conviction in Louisiana. The Court therefore determined that Evans was a third multiple offender and sentenced him accordingly.

On direct appeal, Evans's counsel argued that the State failed to meet its burden of proof on the first predicate offense, the 1988 conviction for possession of marijuana with intent to distribute. Counsel argued that the only evidence produced was the indictment, an entry of guilty plea, and the judgment from the Forrest County Court bearing Case No. 12395. He argued that these exhibits did not constitute a certified copy of a minute entry showing that Evans was represented by counsel, as required by state law. Evans filed a *pro se* supplemental appeal brief in which he asserted these same arguments as to both of the predicate offenses.

The Louisiana First Circuit also held that the evidence produced by the State clearly indicated in both cases that Evans entered a plea of guilty on the record of the respective court while assisted by counsel. The Court further determined that the case law relied upon by Evans, *State v. Allen*, 777 So.2d 1252 (La. App. 4th Cir. 2001), was based on outdated jurisprudence that left the entire burden on the State and failed to follow the holding in *State v. Shelton*, 621 So.2d 769 (La. 1993) in which the Louisiana Supreme Court set forth the appropriate scheme for allocating the burdens of proof in habitual offender proceedings. Finding that Evans failed to rebut the evidence produced by the State, which it found to be sufficient proof of his two prior convictions, the Court affirmed the multiple offender adjudication.

As outlined above, the Trial Court and the Louisiana First Circuit determined that the evidence presented by the State identified Evans as the same person who was convicted in 1988 and 1993 and that the records demonstrated that the pleas were knowingly and voluntarily made while

assisted by counsel. Evans has pointed to nothing in the record to refute these findings of fact that has not already been addressed and resolved by the state courts in reaching their conclusions. Instead, these findings are supported by the record and transcripts, including the documents referenced therein. The findings are supported by the record and are entitled to deference.

The evidence, considered in the light most favorable to the prosecution, was sufficient for the state courts' to find that the prior felony convictions were appropriate as a basis to enhance Evans's sentence under the Louisiana habitual offender laws. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application, of Supreme Court precedent. Evans is not entitled to federal habeas corpus relief on this claim.

## VIII.   Excessive Sentence

Evans alleges that his life sentence is excessive, because he was sentenced under the law in place in 1996, when he committed the crime, rather than the law in place at the time of his conviction and sentencing. At the time he committed the crime, the Louisiana habitual offender law provided that a third offender be sentenced to life if his current or either of his two prior felonies were violations of the Uniform Controlled Dangerous Substances Law punishable by more than five years. In 2001, the habitual offender sentencing guidelines at La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) were amended to require that the third felony and both of the two prior felonies be violations of the Uniform Controlled Dangerous Substances Law punishable by more than ten years. He claims that this change in the law would have called for him to receive a shorter sentence rendering his life sentence unlawful. He further claims that, under La. Rev. Stat. Ann. § 15:308[40]

_____

[40]In relevant part, La. Rev. Stat. Ann. § 15:308 provides as follows:
B.       In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of

26

as interpreted by *State v. Dick*, 951 So.2d 124, 131 (La. 2007), which ameliorated harsher sentences mandated by the Louisiana laws prior to 2001, required the state trial court to sentence him to a lesser sentence.

The State contends that La. Rev. Stat. Ann. § 15:308 did not prohibit the sentence imposed by the state courts. Instead, that provision only provided Evans the opportunity to challenge his sentence under pre-2001 law through the Louisiana Risk Review Panel.

As Evans has been informed, this federal habeas court does not interfere in the state courts' application or interpretation of its own laws. *Accord Swarthout*, 131 S.Ct. at 861. A state's compliance with its own sentencing procedures is not reviewable through federal habeas corpus proceedings. *Joseph v. Butler*, 838 F.2d 786, 789 n.2 (5th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted).

That notwithstanding, Evans has failed to establish any error, constitutional or otherwise, in the imposition of his sentence. The Louisiana courts also determined that the state trial court did not err in its sentencing and that Evans had no relief available under the provisions of § 15:308 as he suggested. The Louisiana First Circuit, citing *State v. Sugasti*, 820 So.2d 518, 522 (La. 2002),

---

persons who committed crimes, who were convicted, or who were sentenced according to the following provisions: R.S. 14:56.2(D), 62.1(B) and (C), 69.1(B)(2), 70.1(B), 82(D), 91.7(C), 92.2(B), 92.3(C), 106(G)(2)(a) and (3), 106.1(C)(2), 119(D), 119.1(D), 122.1(D), 123(C)(1) and (2), 352, and 402.1(B), R.S. 15:529.1(A)(1)(b)(ii) and (c)(ii), 1303(B), and 1304(B), R.S. 27:262(C), (D), and (E), 309(C), and 375(C), R.S. 40:966(B), (C)(1), (D), (E), (F) and (G), 967(B)(1), (2), (3), and (4)(a) and (b), and (F)(1), (2), and (3), 979(A), 981, 981.1, 981.2(B) and (C), and 981.3(A)(1) and (E), and Code of Criminal Procedure Art. 893(A) prior to June 15, 2001, provided that such application ameliorates the person's circumstances.

C.      Such persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22.

determined that Louisiana law required Evans to be sentenced under the provisions in place as of the date of the offense, not his conviction or sentencing date. In that regard, the Court resolved that the 2001 change in the habitual offender laws relied upon by Evans were prospective only and did not apply to him. Any relief from his pre-2001 sentence had to be submitted to the Louisiana Risk Review Panel as indicated in the Louisiana Supreme Court opinion in *Dick*.

Evans has not presented any proof to this Court that he exercised this option. Having failed to do so, he also has failed to fully exhaust available state remedies on the issue of his entitlement to a lesser sentence. Nevertheless, his arguments to this Court only address the state court's failure to apply the revised sentencing scheme and La. Rev. Stat. Ann. § 15:308 to his case. However, "[t]he Due Process Clause does not . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Parke v. Raley*, 506 U.S. 20, 32 (1992) (quoting *Medina v. California*, 505 U.S. 437, 451 (1992)). Enhancement proceedings are not determinative of guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. *Buckley v. Butler*, 825 F.2d 895, 902-03 (5th Cir. 1987).

Evans has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation, and the Court's research has located none. As stated above, claims that a state court improperly applied state law do not constitute an independent basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Evans has not shown that the state court's decision was contrary to or an unreasonable application of any federal law. He is not entitled to relief in this federal court.

## IX.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Cedric Evans's request to voluntarily dismiss his first claim, challenging the denial of the motion to quash, be **GRANTED** and the claim **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that Evans's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 13th day of March, 2012.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[41]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.